| AOC-105          Doc. Code: CI | | Case No. | 14-CI-514 |
| Rev. 1-07 | **CIVIL SUMMONS** | Court | ☑ Circuit  ☐ District |
| Page 1 of 1 | | County | Madison |
| Commonwealth of Kentucky | | | |
| Court of Justice   www.courts.ky.gov | | | |
| CR 4.02; CR Official Form 1 | | | |

Heidi Erickson                                                    **PLAINTIFF**

VS.  Commonwealth of Ky.
     Cabinet of Health and
     Family Services

                                                                 **DEFENDANT**

**Service of Process Agent for Defendant:**
Audrey Haynes
275 E. Main St. 5W-A
Frankfort, Ky. 40621

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

        You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on
the document delivered to you with this Summons.  **Unless a written defense is made by you or by an attorney on
your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you
for the relief demanded in the attached Complaint.

        The name(s) and address(es) of the party or parties demanding relief against you are shown on the document
delivered to you with this Summons.

Date: _____9/9_____, 2_014_

By: _____ Clerk

    _____ D.C.

---

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

this _____ day of _____, 2_____.

                              Served by: _____

                                         _____ Title

COMMONWEALTH OF KENTUCKY
CIRCUIT COURT OF MADISON COUNTY
DIVISION ___II___   CASE # _14-C1-514_

HEIDI ERICKSON,
                    *Petitioner,*

VS.

COMMONWEALTH OF KENTUCKY, CABINET OF HEALTH AND FAMILH SERVICES,
AUDREY HAYNES, SECRETARY; TERESA JAMES, COMMISSIONER of DIVISION of COMMUNITY
BASED SERVICES (DCBS), PUBLIC ASSISTANCE APPEALS BOARD, DANA NICKLES, LEE GUICE,
COLLEEN HAGAN, MARK NEFF, MATHEW MOONEY, MARIA DELA CRUZ, WENDY CUMPSTON,
LAURA HELVEY and DOE (unknown supervisor(s)).
                    *Defendants.*

---

## VERIFIED PETITION PURSUANT KRS 13B.140
## And KRS 13B.150(1) (FRAUD and MISCONDUCT)
### REQUEST FOR ORAL ARGUMENT

Petitioner, HEIDI ERICKSON[1] a resident of Madison County, Kentucky timely files for relief from an arbitrary *exparte* [2] decision by the Appeal Board for Public Assistance (ADDENDUM D) 'Affirmed' the Commissioner's Final Order issued 224 days late in violation to KRS 13B.120(4)(b) (see *fn* #2) reversing the Hearing Officer's <u>Recommended Decision</u> (ADDENDUM A)

### GROUNDS
The Hearing Officer, issued a <u>Recommended Decision</u> (ADDENDUM A) on 11/6/13 which accurately reflects the record and regulatory authority, and reversed and remanded the case back to DCBS. The Commissioner issued a Final Order (ADDENDUM C) reversing the Hearing Officer's <u>Recommended Decision</u> 224 days later(see *fn* #2) and on 6/9/14 in violation to KRS 13B.120(4)(b). In addition, the Final Order has numerous errors of law, fact and conjecture including it resulted from fraud due to an *exparte* communications an Exception was filed on 11/21/13 (ADDENDUM B) but not served on Petitioner. The Final Order infringes on Regulatory framework, Petitioner's due process protections 7 CFR 273.15(c)(3) & (q)(4), 273.9(d) and her 14th Amendment protections.

Petitioner seeks Reversal and Stay of the Final Order (ADDENDUM C) and Relief of her SNAP benefits immediately reinstated to the level prior to this adverse action  The Order relied upon *exparte* Exception filed on 11/21/13 *"Review of Final Order shall be confined to the record unless fraud or misconduct ... "* KRS13B.150(1) and thus she seeks Oral Argument. Respondents have a duty, are Public Entities pursuant to Title II of the Americans with Disabilities Act, and should be held accountable for their negligence, failure to comply to regulatory authorities embodied in 7 CFR 272.2 especially in regards to Petitioner's 'sustenance' benefits pending a 'fair hearing (7 CFR 273.15(k)) and if this Honorable Court allows, actionable under 28 USC §1983.

---

[1] Petitioner a disabled individual recertified for SNAP benefits in 2013 , claims Agency discriminated against by failing to include medical costs of "securing service animal" and then retaliated in its Final Order and continues this retaliation today in her 2014 recertification (refusing; her a fair hearing pursuant to 7 CFR 273.15 and continued benefits 7 CFR 273.15(k)) Emergency relief is sought to continue SNAP benefits pursuant to 7 CFR 273.15(k) pending resolution.
[2] KRS 13B.120(4)(b) requires *"the agency head shall render a final order within 90 days after"*

1

DEFENDANTS

COMMONWEALTH OF KENTUCKY the original guarantor of 7 U.S.C. section 272.2 et seq. with the United States Department of Agriculture and the FNS; Attorney General, Jack Conway 700 Capitol Avenue, Suite 118, Frankfort, KY 40601-3449.

CABINET OF HEALTH AND FAMILY SERVICES "CABINET" , 7 C.F.R. 271.4 requires the cabinet to administer the Food Stamp Program within the Commonwealth of Kentucky and K.R.S. 194A.010 requires the Cabinet to administer income-supplement programs that protect, develop, preserve, and maintain families and children in the Commonwealth; 275 E. Main St/, 5W-A Frankfort, KY 40621.

AUDREY HAYNES, SECRETARY, "HAYNES" of the Cabinet of Health and Family Services, is brought into this suit for both her professional 'Official' and 'Personal' capacities and is responsible for the overall operation of the SNAP benefit program for the Commonwealth of Kentucky 275 E. Main St/, 5W-A Frankfort, KY 40621.

DIVISION of COMMUNITY BASED SERVICES "DCBS" is responsible for the implementation, screening, eligibility, benefit determinations, and the daily management of the SNAP benefit program in KY.

TERESA JAMES, COMMISSIONER "JAMES" 275 E. Main St/, 5W-A Frankfort, KY 40621, brought into this action in their individual & official capacity.

DANA NICHLES, PUBLIC ASSISTANCE APPEAL BOARD MEMBER, Hearing Officer, 275 East Main Street, 5W-A, Frankfort, KY 40621 is brought into this suit in official and individual capacities.

LEE GUICE, PUBLIC ASSISTANCE APPEAL BOARD MEMBER, Hearing Officer, Hearing Officer, 275 East Main Street, 5W-A, Frankfort, KY 40621 in official and individual capacities.

COLLEEN HAGAN, PUBLIC ASSISTANCE APPEAL BOARD MEMBER, Hearing Officer, Hearing Officer, 275 East Main Street, 5W-A, Frankfort, KY 4062, in official and individual capacities.

MARK NEFF, "NEFF" Branch Manager of the Cabinet of Health and Family Services, Administrative Hearings Branch is brought into this suit in both his professional and personal capacities.

MARIA DELA CRUZ, "DELA CRUZ" Hearing Officer, brought into this suit in official and individual capacities, Div.of Adm. Hearings 105 Sea Hero Road, Suite #2, Frankfort, KY 40601

MATHEW MOONEY, "MOONEY" Branch Manager of the Cabinet of Health and Family Services, Administrative Hearings Branch is brought into this suit in both his professional and personal capacities; Div.of Adm. Hearings 105 Sea Hero Road, Suite #2, Frankfort, KY 40601

WENDY CUMPSTON, "CUMPSTON" Manager Nutrition Assistance Branch, Division of Family Support, 275 East Main Street, 3E-1, Frankfort, KY 40621 is brought into this suit in both her professional and personal capacities.

REBECCA WINBURN, "WINBURN" Field Services Supervisor Division of Community Based Services, Fayette Co., Lexington, KY is brought into this suit in her official and individual capacities.

2

STEVEN COURTNEY, "COURTNEY", Supervisor Regional Administrative Area, Division of Community Based Services, Fayette Co., 2050 Creative Drive, Lexington, KY 40505, is brought into this suit in his official and individual capacities.

LAURA HELVEY, "HELVEY" Family Support Specialist, Division of Community Based Services, Fayette Co., 2050 Creative Drive, Lexington, KY 40505, is brought into this suit in her official and individual capacities.

DOE, "DOE" are unknown "supervisors" referred to by Laura Helvey who told her to act/fail to act, Family Support Specialist, Division of Community Based Services, Fayette Co., 2050 Creative Drive, Lexington, KY 40505, is brought into this suit in her official and individual capacities.

## JURISDICTION

1. This Honorable Court has subject matter jurisdiction from an Agency action pursuant to KRS 13B.140(1) (ADDENDUM E$_2$) Judicial Review of a Final Order (Addendum D) dated August 8th, 2014 filing a Petition in Circuit Court within 30 days of service. Petitioner, received the Final Order from the Appeal Board of Public Assistance on 8/12/14. In addition, this Honorable Court has jurisdiction pursuant to KRS 23A.010(4) (ADDENDUM E) The Circuit Court may be authorized by law to review the actions or decisions of administrative agencies and shall constitute an original action.

2. Petitioner further seeks to enjoin the Defendants from failing to provide to her necessary benefits and pursuant to the Federal Regulatory Laws of the SNAP program and specifically those related to 7 C.F.R. §§273.13(1)(a) & (3)(v) & (3)(vi) and to 7 C.F.R. §273.15(k) pending resolution of this matter. Petitioner files herewith a Verified Emergency Motion for Relief and Injunction seeking "*Goldberg* protections[3]" see 397 US 254. SNAP benefits are sustenance for Petitioner, a qualified recipient who will continue to suffer irreparable harms. The relief sought is in reason and necessary.

3. Each of the Defendants have a duty to the Petitioner which has been breached. And Petitioner has attempted over a year of mitigation of damages. The following is the example of repeated inaccuracies found by others who were not present at the 'fair hearing' but wrote their interpretations misstating the language used especially when it comes to federal regulatory language that requires precision in interpretation: compare the 11/6/13 Hearing Officer's Recommended Decision (ADDENDUM A) at page 4 of 7 to that of the Agency' letter 'Exception' (ADDENDUM B) dated 11/21/13 from Wendy Cumpston Manager Nutrition Assistance Branch, to Edwin Langford Commissioner's Office "... Wendy incorrectly wrote: *Hearing Officer recommends the decision of the DCBS be reversed ... the Agency did not correctly determine SNAP benefits. The Hearing Officer asserts that the Federal regulatory guidelines do not require ... recipients provide verification a service animal is specially trained ...*" To Correct the Hearing Office wrote "*Federal Regulation 28 CFR 35.136, Service animals, states, (f) Inquiries. A public entity shall not ask about*

---

[3] United States Supreme Court's holding in Goldberg v Kelly 'welfare benefits shall not be discontinued prior to a fair hearing' 'without deprives the recipient important due process protections'. Compare the 6th Circuit's findings in *Nicholson v Comm'r Soc. Sec*, 83 Fed Appx 785, 2003 The Court distinguished *Goldberg* as having been based on a welfare recipient's extreme financial need and held that since eligibility for disability benefits was not based on need and since the beneficiaries might have other means of subsistence, the claimants are not entitled to a pre-determination hearing.

3

*the nature or extent of a person's disability, but may make two inquiries to determine whether an animal qualifies as a service animal. A public entity may ask if the animal is required because of a disability and what work or task the animal has been trained to perform. A public entity shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal.".*

4. The Service Dog's presence at the Hearing and the attestations of the Petitioner, the Affidavit's of Petitioner's doctor's all verified that the animal was Petitioner's trained service dog and the expenses related to it were allowable medical deductions for the tabulation of SNAP benefit allotment. Petitioner sought to have deducted as allowable medical deductions (7 CFR 273.9(d)(3)(vii)(ix)" expenses in securing and maintaining a service dog, ie dog food, vet. bills" and other expenses related to (iii) Rx drug costs, doctor visits and (ix) travel there to deducted from her unearned income in the tabulation of her SNAP benefit allotment

5. These incorrect recitation of facts, findings and regulatory language is then repeated by the Commissioner and the Appeals Board for Public Assistance fails to even provide the Petitioner with an opportunity to be heard! Either file a brief, submit an opposition or anything to incorrect issues and while both divisions of this Agency fails to provide the Appellant an opportunity to be heard and correct the record Petitioner's due process rights are infringed she therefore seeks this Court for a remedy, relief and a stay pending its decision thereon.

6. Petitioner's arguments will also surround the facts that the Respondents are a Title II Public Entity who, according to the Department of Justice, may not require a service animal to be certified to qualify it as a "service animal" for the purposes of the SNAP benefit program although at the hearing Erickson provided ample evidence and verification that her service dog assisted her with her disability and that he was evidently trained to do the tasks she testified thereto. At no time did Petitioner testify that her service dog was not trained nor that it didn't require training, it just didn't require to be certified.

7. The Federal Regulatory language applicable herein includes medical costs of "securing a service animal" are used to determine eligibility and allotment of SNAP benefits while the Department of Justice (enforces Americans with Disabilities Act) prohibits Title II Government Entities) and Title III (Public Accommodation Entities) requiring or restricting access because a service animal is not certified and while the Dept. of Justice publishes on its website that it is discriminatory conduct prohibited by law for a Public Entity to require certification for a(n) 'service animal'.

8. This Honorable Court has jurisdiction pursuant to KRS 344.450 for injunctive relief to reduce the ongoing discrimination occurring as the Petitioner is excluded her rights, denied due process and injunctive relief is permissible:

9. KRS 344.450  Civil remedies for injunction and damages:

*Any person injured by any act in violation of the provisions of this chapter shall have a civil cause of action in Circuit Court to enjoin further violations, and to recover the actual damages sustained, together with the costs of the law suit. The court's order or judgment shall include a reasonable fee for the Petitioner's attorney of record and any other remedies contained in this chapter. Effective:July 15, 1996 History: Amended 1996 Ky. Acts ch.318, sec.323, effective July 15, 1996. -- Created 1974 Ky. Acts ch.104, sec.8 see (Add. B(4)).If this*

4

Honorable Court shall allow its original jurisdiction over this discrimination matter not all inclusive to KRS 344.450 (Add. B(4)) although it is the intended jurisdiction promulgated by the Legislature to enforce the purpose of the Act as found in KRS 344.450 in order "to protect those individuals interest in personal dignity and freedom from humiliation" whereby KRS 344.130 and KRS 344.280 (Add. B(4)) empowers this Honorable Court to regulate discrimination in services from public accommodations including a local government entity where the all the administrative remedies have been exhausted and this not an discriminatory employment practice.

10. Ky. Rev. Stat. Ann. §§ 344.130 & 344.010(5) promulgates that it is "unlawful practice" to deny individuals with a disability full and equal enjoyment of a place of public accommodation and "services" thereof, they are also protected against "any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment" based on their disability including attempts to harass, intimidate a disabled person taking advantage of the limitations and/or threatening the impaired disabled person to their disadvantage the later language "harass", "intimidate" and "taking advantages of the limitations" and/or "threating" is used herein to identify the wrongful actions taken by the Defendants' in issuing its glossing over the issues letter by the Commissioner on 7/25/14 (Ex.2) is language intended to intimidate the Petitioner.

11. This is also an action in equity for the immediate recovery and to reduce the irreparable harms caused by the loss of food stamps (Federal benefit), dignity and blatant discrimination and second to enforce the laws in Kentucky and the United States and third for remedies pursuant to 42 USC section 1983 regarding liability for wrongful acts taken against the Petitioner.

12. Petitioner is an otherwise qualified individual person with a disability. The Amendments to the Americans with Disabilities Act (ADA) signed into law on September 25, 2008, clarify and reiterate who is covered by the law's civil rights protections. The "ADA Amendments Act of 2008" revises the definition of "disability" to more broadly encompass impairments that substantially limit a major life activity. The amended language also states that mitigating measures, including assistive devices, auxiliary aids, accommodations, medical therapies and supplies (other than eyeglasses and contact lenses) have no bearing in determining whether a disability qualifies under the law. Changes also clarify coverage of impairments that are episodic or in remission that substantially limit a major life activity when active, such as epilepsy or posttraumatic stress disorder. The amendments took effect January 1, 2009 and since this Honorable Court may issue Orders to protect the Petitioner pursuant to the above statutes when it Reverses the Final Order either based on due process principles or the statutory framework of either KRS 13B.120(4)(b) or that of 7 CFR 272.2(2) to prevent further unlawful actions this Court has jurisdiction in an action claiming discrimination.


--END OF JURISDICTION --


5

# FACTS

1. The Hearing Officer issued her <u>Recommended Decision</u> on 11/6/13 after a full hearing reversing the agencies adverse action (ADDENDUM A), and remanding. This case was never remanded.

2. The Agency Head (Commissioner James) issued a Final Order on 6/9/14 (ADDENDUM C) 224 days later in violation to the statutes and regulatory law. A failure to include substantial evidentiary support found in testimonial evidence, Affidavit of Doctors, regulatory deference with a finding based on conjecture results in an arbitrary Final Order.

Judicial review of an administrative decision focuses on arbitrariness. *Kaelin v. City of Louisville*, 643 S.W.2d 590, 591 (Ky.1982). One component of arbitrariness review is "whether determinations are supported by substantial evidentiary support. "*10 Hilltop Basic Resources, Inc. v. County of Boone*, 180 S.W.3d 464, 467 (Ky.2005). A Court will generally confine its review to: (1) whether the findings of fact are supported by substantial evidence of probative value; and (2) whether the administrative agency applied the correct rule of law to the facts. *Board of Com'rs of City of Danville v. Davis*, 238 S.W.3d 132, 135 (Ky.App.2007). Court's are usually bound by subordinate facts found by the hearing officer, and are not bound by the hearing officer's legal conclusions. See *id.* also *Ford Contracting, Inc.* v. *Kentucky Transportation Cabinet* 429 S.W. 3rd 397 Ky. App. (decided February 7th, 2014)

## ANALYSIS  I

The issuance of the Agency's Final Order on 6/9/14 was arbitrary and well beyond a reasonable attempt to comply with the statutory or regulatory framework (to protect, develop, preserve and maintain families) is in violation of the laws: KRS.120(4)(b) and KAR 3:070 Section 16, 7 CFR 273.15(c)(3), (q)(4) (Note both 7CFR273.15(c)(3) and 7CFR273.15(q)(4) are substantively '45 days'). Due process concerns are more important where sustenance like food stamps are concerned Reversal is warranted. See Goldberg v Kelly 397 US 254

3. 921 KAR 3:070 Fair Hearings : States in Pertinent part: Necessity, Function and Conformity: KRS 194A.010(2) requires the Cabinet for Health and Family Services to administer income-supplement programs that **protect, develop, preserve and maintain families**…C.F.R. 273.15 requires the agency administering the Food Stamp Program to provide a hearing system for any Food Stamp Program applicant or recipient who is dissatisfied with an agency decision or action. KRS Chapter 13B establishes the hearing process to be followed in the Commonwealth. This administrative regulation establishes the fair hearing procedures used by the cabinet in the administration of the Food Stamp Program.

4. The Agency Head (Commissioner James) issued a Final Order on 6/9/14, 224 days after the Hearing Officer's <u>Recommended Decision</u>, reversing (ADDENDUM C). The statutory regulatory laws involved are: KAR 3:070 Section 16, 7 CFR 273.15(c)(3), (q)(4) and KRS 13B.120(4)(b). These regulations are 45 days or 90 days to ensure the participant's is protected.

921 KAR 3:070 Section 16 states:
(1) A final order shall be issued in accordance with 7 CFR 273.15(c)[4]

---

[4] Note both 7CFR273.15(c)(3) and 7CFR273.15(q)(4) are substantively '45 days'

(2) If the final order differs from the recommended order, it shall include information and documentation in accordance with KRS 13B.120 and 7 CFR 273.15(q) (see *fn#4* ~45days)

KRS 13B.120(4)(b):

(4) Except as otherwise required by federal law, the agency head shall render a final order in an administrative hearing within ninety (90) days after:
(b) The hearing officer submits a recommended order to the agency head, unless the matter is remanded to the hearing officer ...(This case was never remanded)

Compare:

921 KAR 2:055 Section 12 states in pertinent part:

Final Order. Unless the issue is remanded to the hearing officer for further action, the commissioner or designee shall issue a final order within forty-five (45) days of receipt of the recommended order.

5. The Federal Regulatory Laws in the SNAP program are required to protect the due process rights of the participant (Petitioner) and as these program benefits are sustenance the time frames related to the due process protections (fair hearings, decisions, and a final appealable order) require to be applied without same due process is infringed.

**THEREFORE,** the Final Order failed to follow minimum federal regulatory and statutory requirements thus this part of the Petition on the record alone is sufficient for this Honorable Court to find a Reversal and Stay of the Final Order, in whole without further analysis, a procedure warranted due to the circumstances at issue benefits of food stamps a basic necessary sustenance

## ANALYSIS II

The Agency's Final Order issued on 6/9/14 failed to comply to federal regulatory requirements in violation to 921 KAR Section 16 Final Order

921 KAR Section 16 Final Order
(1) A final order shall be issued in accordance with 7 C.F.R. 273.15(c).
(2) **If the final order differs from the recommended order,** it shall include information and documentation in accordance with KRS 13B.120 and 7 C.F.R. 273.15(q).

6. The Agency's Final Order failed to issue *"separate findings of fact and conclusions of law"* Paragraph #2 of the state Agency's regulatory language as it relates to fair hearing in the administration of SNAP benefit programs by the state Agency requires *"If the final order differs from the recommended order, it shall include information and documentation in accordance with KRS 13B.120 and 7 C.F.R. 273.15(q).*

KRS 13B.120 (3) states:

The final order in an administrative hearing shall be in writing and stated in the record. If the final order differs from the recommended order, **it shall include separate statements of findings of fact and conclusions of law.** The final order shall also include the *effective date of the order* and a statement advising parties fully of available appeal rights.

7

7. The Final Orders has no effective date of the order as it issued well out of statutory limits of 45 days (See 7 CFR 273.15(c) or (q) and 90 days pursuant to to KRS 13B.120(4)(b).

8. The Final Order not even close as the one day relaxed findings the Appeals Court in Kentucky found in *Morgan v Kentucky Board of Medical Licensure* (2004-CA-1609) this order out of time, inconsistent with the federal regulatory and state statutory laws and in retaliation to the Petitioner upon her 2014 recertification on May 30th, 2014. In retaliation the Agency attempts to reversed the Hearing Officer's Recommended Orders in excess of the limitations imposed by federal regulations to ensure a fair hearing and due process for the participant ot the Agency.

9. Final Order contains a verbatim recitation of the Hearing Officer's Finding of Facts numbered paragraphs 1-15 but where the first paragraph of the Hearing Officer's Conclusions the Final Order adds only a conjecture:

> "(FNS) Policy Memo dated (7/2/90) prior to the effective date of the Americans with Disabilities Act (7/18/92) entitled *"Treatment of Expenses for Service Animals" "Thus, 7 CFR 273.9(d)(3)(vii) shall be interpreted to include the costs associated with any animal specially trained to serve the needs of the disabled participant."*

> *"In the case at hand the Appellant provided a bill of sale for the purchase of a puppy dated June 2013 and a statement of medical expenses that listed the purchase of a service dog "(who is now in training)"indicating that the animal was not specially trained as mandated by the SNAP Policy Manual at the time of the June 12 2013 application"*

10. The Final Order jumps to a conclusion (see bold above) that is not supported by the evidence in the record as the Petitioner testified that the puppy received training since May 2013 and that by the time of the June 12th, 2013 application it was in training and performing tasks.

11. Thus the Final Order contains 1. **errors of fact, 2. evidence not in the record, 3. Conjecture** see last paragraph of the Conclusion:

   1. **Error of Fact and Conjecture**
     a. Bill of Sale dated June 2013 was submitted to evidence the payment in full for the service animal it did doesn't state the date the service animal was obtained. CORRECT Petitioner also requested reimbursements for "allowable medical deductions" <u>documents dated in May 2013</u> for transportation, veterinary bills and training equipment etcs. And <u>Testimony</u> from the Petitioner that her service dog in training since May and currently performing tasks supporting her ability to cope with her disability. Supports the fact the dog had been in training and that she had obtained it in May 2013.

   2. **Evidence not in the record**
     a. "(who is now in training)"
     This evidence is found on the bill of sale but that documentary evidence is superseded or surpassed as in evidentiary weight by testimonial evidence given by the Petitioner as her service animal was in training since May 2013 and was then and now in June 2013 and at the time of the hearing performing task

8

related to her disability.  These facts including the Final Order's "(who is now in training)" quote are not found anywhere in the Recommended Decision and/or documentary evidence but are in the record.

3. **The Testimonial evidence found in the record**

    The Final Order doesn't refer to the testimonial evidence that carries much more weight then a bill of sale document. The final order weighing documentary evidence over testimonial evidence found by the hearing Officer, is arbitrary and an abuse of discretion.

4. Testimonial evidence of the Petitioner that at the time of the application in June 2014 that her service animal had received training and that it was in fact performing tasks related to her disability in June 2013 is probative and substantial and cannot be ignored as in the Final Order relying upon a document with dictum is capricious.

5. Conjecture in a Final Order improper **"indicating that the animal was not specially trained as mandated"** conflicts with the evidence in the record including testimonial evidence by the Petitioner that at the time of the application her service animal had been trained and receiving additional training (in training) to accommodate and help her cope with her disability. Service Animals continually improve and/or refreshen their training.  To exclude the "costs of securing a service animal" because it was in training while it still was performing tasks for the Petitioner defeats the intensions of the legislature.

6. The emphasis in *bold* identifying where the Final Order places its opinion based on a contradiction of the evidence in the record.  The Agency Head not the trier of fact identifies a document(?) *"the Appellant provided a statement of medical expenses that listed the purchase of a service dog"* and *"(who is now in training)"* the inclusion of the parenthesis surrounding a fact that is not in the record or if it is it is not in the Hearing Officer's <u>Recommended Decision</u>'s Findings of Facts in the 1-15 numbered paragraphs

12. **Correction: Bill of Sale is dated May 2013.** It was on June 12th, 2013 a month later, a month of training the Petitioner had put her service animal through prior to recertification pursuant to 7 CFR 273.14. Petitioner argues the plain language as defined **"cost of securing"**.

13. 7 USC § 273.10(a)(2) tabulations on deductions from her unearned income in calculating her benefit allotment pursuant to all eligibility criteria including (iv) Medical expenses shall be budgeted prospectively; and including deductions for the cost of **securing** and **maintaining** a service animal.

14. The Federal regulatory framework in the recertification process take into account the participant's previous year of eligibility and prospective medical costs. To exclude the "costs of securing a service animal defeats the intentions of the statutes:

    "All statutes . . . shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]" KRS 446.080. In construing a statutory provision, we must "look to the letter and spirit of the statute, viewing it as a whole." *Lewis v. Jackson Energy Co-op. Corp.*, 189 S.W.3d 87, 93 (Ky. 2005) (citation omitted). Our goal is to construe a statute so that no part of its provisions is rendered meaningless and ineffectual. *Hardin County Fiscal Court v. Hardin County Bd. of Health*, 899 S.W.2d 859, 861-62 (Ky. App. 1995).

15. The Agency's Manuel identifies allowable medical deductions in calculating a disabled persons individual's SNAP benefits allowances. At MS 5430(I) mirrors the federal regulatory language found in the Americans with Disabilities Act as to service animals in 28 CFR § 35.104 and § 35.136 that the Agency has already given deference to the ADA in defining a service animal although a service animal is also defined in the recently amended HUD Fair Housing Regulations and had been established by the Air Carriers Act long before the ADA was first introduced in 1990 and enforceable in July 1992 The weight of the Agency's manual carries:
   MS 5430(I): " cost of **securing** and maintaining service animals…" {emphasis in **bold** added}

16. 7 CFR 273.9(d)(3)(vii) *"costs of securing and maintaining a service animal"* the interpretation of this portion of the regulation "securing" means the purchase, if any, the training, if any and the costs associated with securing. In interpretation of statutes Congress meant what is says and one may not read into the it suggesting as the Commissioner did with her conjecture, without reviewing the evidence to the contrary and that would mean to review the testimony from the Petitioner and its quality.

17. Judicial Review is "altered when the agency denies relief to the party saddled with the burden of proof. *Bourbon County Bd. of Adjustment v. Currans*, 873 S.W.2d 836, 838 (Ky.App.1994). In such a case, "the failure to grant administrative relief to one carrying the burden is arbitrary [only] if the record compels a contrary decision in light of substantial evidence therein." Id. - See *Ford Construction, Inc. v Kentucky Transportation Cabinet*, 429 S.W. 3rd 397 Ky. App. (2/7/14).

   "[I]t is basic hornbook law that the "trier of facts is afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses appearing before it." *Bowling v. Natural Resources and Environmental Protection Cabinet*, 891 S.W.2d 406, 409-10 (Ky. App. 1994).*Id*

   "To put it simply, 'the trier of facts in an administrative agency may consider all of the evidence and choose the evidence that he believes.'" *Id.* (citation omitted). This Court may not reconsider or "pass upon the credibility of witnesses, and the weight of the evidence" for these functions rest within the "exclusive province of the administrative trier of fact." *Id.* Finally, statutory interpretation is an issue of law and, accordingly, we review the circuit court's statutory construction *de novo*. See *Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007), *Id.*

18. Not infrequently, contestants appear at the judicial level arguing that the administrative decision is not supported by substantial evidence when the board has offered no relief in the first instance. In other words, the board has ruled that the one having the burden of proof— usually the applicant — has failed. In such cases, attention should be directed to the administrative record in search of compelling evidence demonstrating that the denial of the relief sought was arbitrary. The argument should be that the record compels relief. The argument that there is no substantial evidence to support 'non-relief' is an anomaly. *Ford* at

## STATUTORY CONSTRUCTION

1. The evidence of statutory construction as to the intent of the Cabinet in constructing its rules and regulations found in its SNAP Benefits Manuel at MS 5430(I) is that it used the language directly out of

10

the rules and regulations found in the language of the Americans with Disabilities Act at 28 CFR § 35.136 et seq.as to service animals.

2. And when the Cabinet broadening this language on service animals found in the Federal Regulations for SNAP benefits 7 CFR § 273.9 (d)(3)vii from "seeing eye or hearing dogs" to the more broader "service dogs or miniature horses trained to do work or perform tasks for persons with disabilities" it gave deference to the Americans with Disabilities Act and the Department of Justice's interpretation word for word and thus intended to be inclusive to service dogs or miniature horses performing a task for a person with a disability relying upon the ADA. Kentucky legislature broadened the laws to be more inclusive of "service dogs in training" and with protections for the person training a service animal (see footnote #2 KRS 258.500 et. seq.)  See also definitions

3. 7 CFR § 273.9 (d)(3) vii Securing and maintaining a seeing eye or hearing dog including the cost of dog food and veterinarian bill" compare 28 CFR § 35.104 definition of service animal found in the ADA:

   Service animal means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. Other species of animals, whether wild or domestic, trained or untrained, are not service animals for the purposes of this definition. The work or tasks performed by a service animal must be directly related to the handler's disability. Examples of work or tasks include, but are not limited to, assisting individuals who are blind or have low vision with navigation and other tasks, alerting individuals who are deaf or hard of hearing to the presence of people or sounds, providing nonviolent protection or rescue work, pulling a wheelchair, assisting an individual during a seizure, alerting individuals to the presence of allergens, retrieving items such as medicine or the telephone, providing physical support and assistance with balance and stability to individuals with mobility disabilities, and helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors.

4. These service animals may or may not be so obvious as those leading the blind but the regulation surrounding methods of the State Government's inquiry remains the same for a "seeing eye dog" as it does for "service animal for an individual (Veteran or not) who has a neurological disability" In either inquiry the dignity of the individual remain fairly constant as does the federal regulation surrounding the Title II Public Entity's inquiry to verify the service animal.

5. The ADA's regulations at 28 CFR 35.136(f) includes clear limitations on a public entities verification process:

   (f)  Inquiries. A public entity shall not ask about the nature or extent of a person's disability, but may make two inquiries to determine whether an animal qualifies as a service animal. A public entity may ask if the animal is required because of a disability and what work or task the animal has been trained to perform. A public entity shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal.

6. The Cabinet has restricted the access of Claimant to its program of services based on her disability because she chooses to use a service dog while the Cabinet's unlawfully requires her service animal be a member of a club, or a card carrying dog – a process specifically designated as unlawful by the implementing federal regulations of the ADA in 28 CFR 35.136(f) or those in the Rehabilitation Act to providing a reasonable modification of a policy or rule to allow the Claimant with her disability access

11

to its program and services – here eligibility to the criteria for SNAP benefits allotment based on the inclusion of her "allowable medical deductions" in the calculation of her SNAP allotment.

Compare:

7.  A "reasonable accommodation" under section 504 of the Rehabilitation Act is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy services from a public entity. The Act makes it unlawful to refuse to make reasonable accommodations to rules, policies, practices, or services when such accommodations may be necessary to afford persons with disabilities an equal opportunity to use and enjoy the public entities services.

The Definitions in Kentucky contained in KRS 525.010(6)(h) "Service animal" includes: Paragraph (h) "Assistance dog" which means any dog that is trained to meet the requirements of KRS 258.500 KRS 525.210 Duty status of service animal not a factor in application of KRS 525.200 and 525.205. KRS 525.200 and 525.205 shall apply whether or not the service animal is on duty or off duty. Effective: July 15, 1998

KRS 258.500 (10) The provisions of this section shall also apply to any mobility-impaired person accompanied by a dog trained to provide support or assistance for a mobility-impaired person. As used in this section, "mobility-impaired person" means any person, regardless of age, who is subject to a physiological defect or deficiency, regardless of its cause, nature or extent, that renders the person unable to move about without the aid of crutches, a wheelchair, or any other form of support, or that limits the person's functional ability to ambulate, climb, descend, sit, rise, or to perform any related function.

THEREFORE, the Final Order's required elements to ensure due process, pursuant 921 KAR 3:07 Section 16 (see hereinabove page 7) requires that if the Final Orders differs from the Recommended Decision of the Hearing Office " *it shall include separate statements of findings of fact and conclusions of law.*" . The record speaks for itself and the Final Orders contains the exact Findings of Facts in an identical recitation of the findings of facts (paragraphs 1-15 found in the Recommended Decision) while the conclusions of law as it relates to the identity of a "service animal" referring to the record at "(who is now in training)" arbitrary and have vertically no evidentiary support from the record to rely solely on this dictum. All service animals are continually being refreshed (in training) and some who are hopeful to gain insight in their handler's unique set of characteristics like aura detection for seizures takes time. Thus the Final Orders should be Reversed and the case remanded while this Honorable Court issues a Stay of those Final Orders for *Goldberg protections*.

## ANALYSIS III

19. Tthe Final Order is in excess of the statutory authority of the Agency and not consistent with the regulatory language or legislative intentions (See above Analysis II) that is evidenced by the word "*securing*" to mean nothing less then its *Plain meaning* to include the costs as the Petitioner has claimed in **obtaining her service animal.**

20. On or about 6/12/13 the Petitioner filed her recertification for the federal SNAP benefits pursuant to 7 USC § 273.14(recertification) and requested deductions from her unearned income

12

in tabulating her benefit allotment pursuant to all eligibility criteria including and not limited to 7 USC § 273.9(d)(vii) "costs of securing and maintaining a service animal.".

21. Food Stamps is a federal program administered by the State. 7 CFR 271.4(a). The Code of Federal Regulations (CFR) contains the rules for determining how Food Stamp benefits are calculated. The 'State'[Commonwealth of Kentucky] has adopted the Federal Food Stamp regulations by reference. [921 KAR Et. Seq.]

22. A recipient's monthly Food Stamp benefit is determined based upon her income after allowable expenses are deducted from that income. A disabled person is allowed a Food Stamp deduction from her income for "medical expenses in excess of $35 per month." 7 CFR 273.9(d)(3). The regulation reads as follows:

> (d) *Income deductions.* Deductions shall be allowed only for the following household expenses: (3) *Excess medical deduction.* That portion of medical expenses in excess of $35 per month, …by any household member who is disabled as defined in § 271.2. . . . Allowable medical costs are:
>    (i) *Medical and dental care* including psychotherapy and rehabilitation services ...;
>    (ii) Hospitalization or outpatient treatment .... ;
>    (iii) *Prescription drugs* …costs of medical supplies, … equipment (including rental) or other prescribed equipment are deductible …;
>    (iv) Health and hospitalization insurance policy premiums…;

23. The Final Order's applying its Opinion that Petitioner's eligibility and participation in receiving SNAP benefits in the correct allotment based on medical expenses she incurred by excluding the *"allowable medical deductions* 7 CFR 273.9(d)(3)(vi) the *"costs of securing and maintaining her service animal"* defeating the intentions of Congress and by the effect of this Final Order denied the benefits of the services, **programs**, or activities of a public entity, and thus being subjected to prohibited discrimination by the Respondents Agency (the Title II Public Entity).*42 U.S.C. § 12132.* To the extent feasible, courts have looked to decisions construing the Rehabilitation Act to assist us in interpreting analogous provisions of the ADA. See *Helen L. v. DiDario, 46 F.3d 325, 330 n.7* (3d Cir.), cert. denied, *116 S. Ct. 64 (1995).*

24. In order to provide the Agency with documentary evidence sufficient to comply with 7CFR 273.2(f) Petitioner's evidence of her claimed "allowable medical deductions" she incurred over the last two months Petitioner provided the agency, Laura Helvey with an official print out of her Bank of America transaction for a 5/13/13, $300 debt transaction to *Lexington Behavioral M. Lexington, KY.* 242547731322753027381 78, Merchant category: 'Medical Services and Health Practitioners' and a Merchant category code: *8099*, Expense category: *Professional Services & Memberships Organizations* as documentary proof of her payment 'for service' to Dr. Wright pursuant to 7 CFR 273.2(f), then requested of Ms. Helvey to call the doctor's office to confirm if necessary pursuant to 7 CFR 273.2(c)(5)requires *"the State agency's responsibility to assist the household in obtaining required verification".*

25. The Petitioner then provided the Agency and Ms. Helvey a 2page Affidavit (Exhibit #1) signed by Petitioner with 24 pages of exhibits identified in her Affidavit as Exhibits 1- 5, and 5a-5c. The Agency did not ask for further documentation and then failed to use the above documentary

evidence not consistent with the federal regulations and made recertification intentionally difficult, burdensome, discriminatory and thus unlawful.

26. Petitioner provided adequate and reasonable verified documentation for the requested allowable medical deductions pursuant to 7 CFR 273.9(d)*(3)(iii) Prescription drug cost(s) (vii)" expenses in securing and maintaining a service dog, ie dog food, vet. bills"* from her unearned income in the tabulation of her SNAP benefit allotment; and *(ix) Reasonable cost of transportation and lodging to obtain medical treatment or services.* And the Hearing Officer agreed see <u>Recommended Decision</u> page 3 CONCLUSION

27. Petitioner was accompanied by her service dog to and from the hearing, its presence and observable task was also evidence the Hearing Officer was evaluating in addition to the live Testimony provided by the Petitioner.

## ANALYSIS IV

The Agency's Final Order issued on 6/9/14 relied upon *exparte* communications that substantially prejudiced the Petitioner in violation to KRS 13B.150(1) Reversal is warranted.

28. The Agency issued an Exception (ADDENDUM B) on 11/21/13 and failed to send it to the Petitioner.

29. On or about June 12th, 2013 the Petitioner requested of the Agency a 'reasonable accommodation' as to communications and requested of it to communicate with her via email and supplied the Agency her email (<u>Heidi_K_Erickson@yahoo.com</u>). The Petitioner's request for a reasonable accommodation included that it send her all communications whether it sent her same via the United States Post Office this was because of her mobility disability and difficulties with mobility that made accessing her mail at what she also claimed an unreliable location PO Box she could not afford to maintain and her home address where her landlord had intentionally damaged the mail box that was at the road and not at her home.

30. Petitioner never received the Agency's Exception (ADDENDUM B) issued on 11/21/13 and therefore was not allowed an opportunity to correct same.

31. Petitioner did receive, the Hearing Officer's <u>Recommended Decision</u> (ADDENDUM A) via her email account <u>Heidi_K_Erickson@yahoo.com</u> on or about 11/7/13, it accurately cites Federal regulatory language and reversed the DCBS decision to exclude costs to secure and maintain her service animal and other "allowable medical deductions" pursuant to 7 CFR 273.9.(d)(3) remanding her case for further review.

32. Petitioner claims the Exception (ADDENDUM B) issued on 11/21/13 became prohibited *exparte* communications which has substantially prejudiced her rights as not only is the Exception misstating the Hearing Officer's Recommendations of Federal Regulatory law, it miss-interprets the federal regulatory laws applied to Title II Public Entities pursuant to the Americans with Disabilities Act as it applies to the definition of a 'service animal' and mis-cites her testimony for the record as Ms. Erickson testified that her service dog is trained in some tasks related to her disability, and is in training for others.

14

33. Petitioner claims the Exception (ADDENDUM B) misrepresents the facts in the record intentionally and is aimed at discriminating against the Petitioner while she attempts to access the SNAP benefit program in terms of eligibility in violation to 7 CFR 272.2(2) (anti-discrimination) and 7 CFR 273 eligibility)) of the Agency in administering her benefits she qualifies thereunder.

34. The errors in the Exception: *"[T]he portion cited by the hearing officer and the ADA citation applies only to public entities in respect to the service animal entering a public establishment. It does not apply to determining eligibility for public assistance programs."* This part of the Exception is conjecture and miss-interprets the federal regulatory law as to Title II Public Entities.

35. Petitioner claims the Exception miss-interprets federal regulatory laws (ADA Title II public entity by claiming the definition of a Service Animal is only applicable in the structural interpretation of the meaning of access of a "service animal [is] entering a public establishment to be eligible as "service animal" for the purposes of determining SNAP benefit allotment as an "allowable medical expense" pursuant to 7 CFR 279.(d)(3) (vii) this interpretation fails as the language of a Title II (Governmental) Public Entity encompasses a broader inclusion to prohibit exclusion of a "service animal" in services of program entitlements/benefits eligibility.

36. The Agency's interpretation whether the *"costs of securing and maintaining a service animal"* are allowable in the Petitioner's case as applied here have no nexus to whether her service animal is defined by access and/or structural program walls *"entrance to an establishment"* or eligibility criteria. Therefore the Agency's Board interpretation of the issues are inconsistent with the definition of a Title II Public (Governmental) Entity pursuant to the Americans with Disabilities Act 42 USC §§ 12181 – 12189.

37. The Agency's argument that the definition of a service animal in relationship to acceptance/recognition to its program applies to a structural application is an improper application while the Petitioner seeks program eligibility as defined in 7 CFR 273.9(d)(3)(vii) and Policy Manual section 5430 allowable medical deductions (costs in securing a service animal).

38. Petitioner claims this is Agency discriminating by 'exclusion' of Petitioner's eligibility because of her disability accommodated by a service animal in terms of eligibility for the allowable medical deductions pursuant to 7 CFR 273.9(d)(3)(vii)

39. Petitioner claims that her eligibility and participation in by excluding the *"allowable medical deductions"* 7 CFR 273.9(d)(3)(vi) to include the *"costs of securing and maintaining her service animal"* are being denied the benefits of the services, **programs,** or activities of a public entity, and thus being subjected to prohibited discrimination by the Respondents Agency (the Title II Public Entity).*42 U.S.C. § 12132.* To the extent feasible, courts have looked to decisions construing the Rehabilitation Act to assist us in interpreting analogous provisions of the ADA. See *Helen L. v. DiDario, 46 F.3d 325, 330 n.7* (3d Cir.), cert. denied, *116 S. Ct. 64 (1995).*

ADA § 202 is violated when a "qualified individual with a disability" is prevented from participating in or benefiting from a public service, program, or activity, by reason of a

qualifying disability, regardless of whether the entity intended to discriminate against the disabled person. See *Pushkin v. Regents of the Univ. of Colo., 658 F.2d 1372, 1384 (10th Cir. 1981)* (showing of discriminatory intent not necessary in Rehabilitation Act action alleging denial of access to public program on basis of disability). The language of the statute also states that a violation occurs when a public entity intentionally discriminates against a qualified disabled person, regardless of whether that discrimination occurs in the context of a public service, program, or activity.

## ANALYSIS V

**The Agency failed to provide necessary and reasonable opportunity to the Petitioner and infringed on her due process rights.  Therefore Reversal warranted.**

40. Petitioner filed a timely appeal with Dana Nickles of the Appeal Board for Public Assistance thereafter requesting to be provided emails of all communications as a reasonable accommodation for her mobility disability, that access to mail a problem because of her disability. Dana Nickles acknowledged the reasonable accommodation with an email.

41. The Appeal Board for Public Assistance Affirmed (ADDENDUM D) the Commissioner's Final Order without providing the Petitioner an opportunity to be heard or correct the record in violation of 921 KAR Section 18 and due process protections.

   Section 18. Appellant's rights prior to appeal board consideration.
   (1) The appeal board shall send the appellant and the authorized representative written acknowledgement of the request for appeal.
   (2) The acknowledgement shall:
     (a) Offer the opportunity to:
       1. File a brief; or
       2. Request permission to submit new or additional evidence; and
     (b) State the tentative date on which the board shall consider the appeal.

   Section 19. Appeal Board Review.
   (1) The appeal board shall consider:
     (a) The records of the hearing; and
     (b) New evidence or exhibits introduced before the appeal board in accordance with subsection (2), (3), or (4) of this section.
   (2) If an appeal is being considered on the record, the parties may:
   (a) Present written arguments; and
   (b) At the board's discretion, be allowed to present oral arguments.
   (3) If needed, the appeal board may request additional evidence to resolve the appeal.
   (4) Additional evidence shall be accepted by the board after a party to the hearing has been given seven (7) days notice of the opportunity to:
   (a) Object to the introduction of additional evidence; or
   (b) Rebut or refute any additional evidence.

33. The Appeal Board for Public Assistance Affirmation of the Commissioner's Final Order in violation to the Petitioner's rights, inconsistent with the statutory framework and unjust.

16

**THEREFORE,** Reversal of the Appeal Board for Public Assistance Affirming the Commissioner's Final Order in violation to the statute and regulatory framework should be Reversed.

## CONCLUSION

34. The Agency Head (Commissioner James) issued a Final Order on 6/9/14 (ADDENDUM C) in violation to the statutes and regulatory law, arbitrary, capricious, misstates the record and an abuse of discretion relying upon and giving weight to dictum.

35. The Agency Final Order is in Retaliation being issued 224 days after the Recommended Decision and too coinsidently after the Petitioner had filed her 2014 recertification for SNAP benefits on May 30th, 2014.  (recertification is yearly)

36. The Final Order, based on *exparte* communications is at the most fraudulent and identifies misconduct in the fair administration of federal regulation, thus resulting in an unfair and unjust final Agency decision.

37. The Agency by ignoring the weigh and evidence of the trier of fact Hearing Officer's Findings of Facts, Conclusions and Recommended Decision as it relates to Federal regulatory laws including Federal Regulation 28 CFR 35.136, Service animals is arbitrary and capricious.

38. The Hearing Office 's Decision reflects the current federal regulations  see at page 4 of 7 *"Federal Regulation 28 CFR 35.136, Service animals, states, (f) Inquiries. A public entity shall not ask about the nature or extent of a person's disability, but may make two inquiries to determine whether an animal qualifies as a service animal. A public entity may ask if the animal is required because of a disability and what work or task the animal has been trained to perform. A public entity shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal."* The Exception filed on 11/21/13 is clearly an erroneous interpretation of the Federal Regulation *28 CFR 35.136* see also the Department of Justice's website and enforced by same:

   *http://www.ada.gov/service_animals_2010.htm*

"Based on the evidence and regulatory guidelines, the Agency did not correctly determine SNAP benefits."

It is the recommendation of the Hearing Officer that the decision of the Department for Community Based Services be **reversed** and **remanded**. The Agency is reversed because SNAP benefits were not determined correctly. The case is remanded in order for the June application to be reinstated and the correct verification requested in writing. Heidi Erickson will again be notified of the Agency's determination and will have appeal rights if dissatisfied.

17

--ADDENDUM A, page 5

The facts and evidence in this record do not support the Agency's action found in its Final Order reversing the Hearing Officer's Recommended Decision:

THEREFORE, based on the above and the request oral argument, this Honorable Court should REVERSE the Final Agency Order issued on 6/9/14.

Respectfully submitted by,

Heidi Kristine Erickson, Petitioner September 8th, 2014
P.O. Box #2, Bighill, KY 40405
859-684-2600, bluegrass.heidi@yahoo.com, alternate email Heidi_K_Erickson@yahoo.com

By signature hereinabove I attest under the pains and penalties of perjury the information and facts herein are to true to the best of my knowledge.  This 8th day of September 2014.

In addition, I was served a copy of the Appeal Board for Public Assistance via email on 8/12/14 attached to an Order issued by a Hearing Officer in DFS14-2870, Maria Dela Cruz hearing my appeal (request for a fair hearing pursuant to 7 CFR 273.15) who has made that appeal unfair claiming the decision I appeal herein requires her to be compelled by it.

If this Honorable Court allows the Petitioner to claim additional issues requiring review outside of KRS 13B.120, 140 and 150 the following is preserved.

## COUNT I
### ADA Title II, as to programs
#### DISCRIMINATION

1. Petitioner re-affirms and re-incorporates Paragraphs above.

2. Respondents actions discriminatory and against the law of this country.

## COUNT II
### CIVIL REMEDIES 42 USC §1983

3. Petitioner re-affirms and re-incorporates Paragraphs above.

4. Respondents are liable to the Petitioner for its negligence and her damages.

5. In committing the acts complained of herein, Respondents' acted under color of state law to deprive Petitioner of certain constitutionally protected rights under the Fourteenth Amendments to the Constitution of the United States.

Jennifer Chambers   9-8-14

12-15-17

18

6.  As a direct and proximate result of the violation of her constitutional rights by the Respondents', Petitioner has suffered general and special damages as alleged herein and entitled to relief under 42 U.S.C §1983.

7.  The conduct of Respondents' was willful, malicious, oppressive and/or reckless, including discriminatory and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

## COUNT III
### DSCRIMINATION
### KRS 344.130

8.  Peitioner re-affirms and re-incorporates the above paragraphs.

9.  It is an "unlawful practice" to deny individuals with a disability full and equal enjoyment of a place of public accommodation and they are also protected against "any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment" based on their disability. Ky. Rev. Stat. Ann. §§ 344.120 & 344.010(5).

10. KRS 344.040(1)(a). One of the purposes of the KCRA is to "provide for execution within the state of the policies embodied in ... the Americans with Disabilities Act of 1990 ("ADA") ..." as well as the other federal civil rights acts. KRS 344.020(1). Accordingly, Kentucky courts have interpreted the KCRA consistently with the ADA and federal law. *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003).

11. Respondents' actions were at times fraudulent against the disabled Petitioner, program participant in order to take advantage of her in her disabling condition while Petitioner will prove that discrimination has occurred as prohibited under the Act(s) and that the Respondents were charged with KRS 194A.010(2) requiring the Cabinet for Health and Family Services to administer income-supplement programs that protect, develop, preserve, and maintain families and children in the Commonwealth the acts alleged and eventually will be proven should cause this Honorable Court to entitled her to punitive damages including actual, proximal and special plus pre-judgment and post-judgment interest and court costs.

## COUNT IV
### FRAUD
### And/or
### FRAUDULENT MISREPRESENTATIONS

12. Petitioner re-affirms and re-incorporates paragraphs above.

37. Respondents' actions were at times indecent and outrageous in a civilized world, against the Petitioner, program participant in order to take advantage of her in her disabling

condition while Petitioner, will prove the alleged fraud has occurred as prohibited under the Act(s) and discrimination has occurred as prohibited under the Act(s) and that the Respondents were charged with KRS 194A.010(2) requiring the Cabinet for Health and Family Services to protect, develop, preserve, and maintain families and children in the Commonwealth the acts alleged and eventually will be proven should cause this Honorable Court to entitled her to punitive damages including actual, proximal and special plus pre-judgment and post-judgment interest and court costs.

WHEREFORE, Petitioner requests that this Court:

    a.    award damages under each of the aforementioned statutes and facts;

    b.    pre-judgment and post-judgment interest;

    c.    court costs and special damages;

    d.    punitive, consequential and actual damages; and

    e.    Any other legal and/or equitable relief that this Court finds appropriate and fair.


Heidi Erickson _____ This 8th day of September, 2014.
By signature herein above I attest under the pains and penalties of perjury
PO Box #2, Bighill, KY. 40405; 859-684-2600; bluegrass.heidi@yahoo.com, alternate
Heidi_K_Erickson@Yahoo.com

NOTARY

                          COMMONWEALTH OF KENTUCKY
                        MY COMMISSION IS THROUGH

20

## ADDENDUM contains:

**ADDENDUM A** Hearing Officer's Recommended Decision, issued 11/6/13

**ADDENDUM B** Exceptionfiled by the DCBS on 11/21/13

**ADDENDUM C** Final Orders issued by Commissioner, James 6/9/14

**ADDENDUM D** Appeals Board for Public Assistance, Affirming 8/8/14

**EXHIBIT #1** Affidavit Petitioner, filed with Agency on 6/14/13 for recertification of SNAP benefits,

**EXHIBIT #2** S.S.A Confirmation of un-earned income dated 6/17/13,

**EXHIBIT #3** Actual Reciepts provided to Agency on 6/20/13,

**EXHIBIT #4** Petitioner's Brief, filed at the Agency Hearing,

**EXHIBIT #5** Letter issued by Commissioner James on 7/25/14 applying agency gloss.

21

COMMONWEALTH OF KENTUCKY
CIRCUIT COURT OF MADISON COUNTY
DIVISION _____II_____   CASE # _14-C1-516_

HEIDI ERICKSON,
                 *Plaintiff,*

VS.

COMMONWEALTH OF KENTUCKY, CABINET OF HEALTH AND FAMILH SERVICES,
AUDREY HAYNES, SECRETARY; TERESA JAMES, COMMISSIONER of DIVISION of COMMUNITY
BASED SERVICES (DCBS), PUBLIC ASSISTANCE APPEALS BOARD, DANA NICKLES, LEE GUICE,
COLLEEN HAGAN, MARK NEFF, MATHEW MOONEY, MARIA DELA CRUZ, WENDY CUMPSTON,
LAURA HELVEY and DOE (unknown supervisor(s)).
                 *Defendants.*

ADDENDUM   A

Hearing Officer's Recommended Decision, reversing the DCBS issued on 11/6/13

28

# COMMONWEALTH OF KENTUCKY
## CABINET FOR HEALTH AND FAMILY SERVICES
### FAMILIES AND CHILDREN ADMINISTRATIVE HEARINGS BRANCH

## ADMINISTRATIVE HEARING NO:  FS 351600644

HEIDI K. ERICKSON                                                    APPELLANT

VS.

DEPARTMENT FOR COMMUNITY BASED SERVICES                   APPELLEE

## RECOMMENDED ORDER

DATE OF ACTION: 6/24/13          DATE OF APPEAL: 6/27/13
DATE OF HEARING: 7/26/13         COUNTY:  034 – Fayette

**HEARING PARTIES:**

Heidi Erickson                    Appellant
Laura Helvey                      Family Support Specialist
Rebecca Winburn                   Field Services Supervisor
Deborah Stanley                   Administrative Hearing Officer

**ISSUE:**

The issue to be heard is whether the Appellant's Supplemental Nutrition Assistance Program (SNAP) benefits [formally called the Food Stamp Program] have been determined correctly in accordance with 921 KAR 3:020.

**ORDER:**

On July 16, 2013 the Agency was ordered to provide the appellant with copies of documents used to make determinations in her applications for SNAP and Medicaid by close of business July 19, 2013.

A pre-hearing conference was conducted on July 26, 2013 to determine the date of action in regards to timely request of hearing.  The date of action was determined and the request for hearing is considered timely.  The pre-hearing conference was adjourned and the hearing conducted.

## FINDINGS OF FACT

1.  On June 12, 2013, Heidi Erickson filed an application for Supplemental Nutrition Assistance Program (SNAP) benefits.

2. On June 12, 2013, the Agency requested information which included proof of all medical expenses paid over prior two months and for service animal/transportation. (Agency Exhibit F)

3. On June 24, 2013, Ms. Erickson was approved prorated SNAP benefits for the application month of June in the amount of $94 and $102 effective July 2013 and on-going. (Agency Exhibit D)

4. Ms. Erickson requested a hearing and requested that her benefits be restored to her prior amount of SNAP benefits of $186. Ms. Erickson is currently being issued $200 in SNAP benefits, the maximum allotment for a household size of one.

5. Based on a printout provided by Ms. Erickson of CVS prescriptions filled, the Agency calculated her prescription cost as $38.37. (Agency Exhibit D)

6. The Agency calculated Ms. Erickson's allowable medical deduction as $108 for the application month of June 2013 which included her Medicare premium of $104.90 and prescription cost of $38 minus $35 ($105 + 38 = 143 – 35 = $108). (Agency Exhibit A and D)

7. The Agency calculated Ms. Erickson's allowable medical deduction as $3 effective July 2013 based on prescription cost of $38 ($38 – 35 = $3). The Medicare premium was disallowed as the State was the payor in July. (Agency Exhibits A and D)

8. Ms. Erickson is dissatisfied that the Agency disallowed a debit/checking account transaction posted on May 13, 2013 for a doctor visit expense. (Appellant Exhibit 1)

9. The Agency testified that an Explanation of Benefits (EOB) statement was needed in order for doctor visits to be considered.

10. The Agency testified that EOB statements were not requested from Ms. Erickson.

11. Agency Exhibit C shows that Ms. Erickson provided primarily debit transactions as verification of expenses instead of itemized receipts from Wal-Mart, Petco, Lowe's, etc.

12. Ms. Erickson is dissatisfied that the Agency disallowed expenses in May 2013 for her service animal consisting of, purchasing and securing transportation; training equipment; veterinarian; dog food; and other dog related expenses totaling $2,852.25. (Appellant Exhibit 2 and Agency Exhibit C)

13. The Agency testified their policy requires that Ms. Erickson provide certification to show the animal is trained as a service animal before deductions can be considered as an allowable deduction. (Agency Exhibit E)

14. Ms. Erickson testified and presented documents to show that the Federal SNAP regulations and the American with Disabilities Act (ADA) contain no language requiring a service animal to be certified. She testified the ADA states that a public entity shall not require proof that the animal has been certified, trained or licensed. (Appellant Exhibit 2)

15. Ms. Erickson provided the Agency with a medical statement from Dr. Richard Fraser which states Ms. Erickson's need for the service animal due to medical conditions consisting of aid in balance, anxiety and seizures. (Agency Exhibit C)

## CONCLUSION

Kentucky Regulation 921 KAR 3:020 Section 5(5), Income Deductions, states, The following shall be allowable income deductions: An allowable medical expense in excess of thirty-five (35) dollars per month incurred by a household member who meets the definition of being elderly or having a disability as defined in 921 KAR 3:010, Section 1(11) and (13):
  (a) Including:
      1. Medical and dental care;
      2. Hospitalization or outpatient treatment and nursing care;
      3. Medication and medical supplies;
      4. A health insurance premium;
      5. A hospitalization insurance premium;
      6. Dentures, a hearing aid, eyeglasses, prosthetics; or
      7. Similar medical expense.

Federal Regulation 7 CFR 273.9(d), Income deductions, states, Deductions shall be allowed only for the following household expenses:
    (3) Excess medical deduction. That portion of medical expenses in excess of $35 per month, excluding special diets, incurred by any household member who is elderly or disabled as defined in §271.2. Spouses or other persons receiving benefits as a dependent of the SSI or disability and blindness recipient are not eligible to receive this deduction but persons receiving emergency SSI benefits based on presumptive eligibility are eligible for this deduction. Allowable medical costs are: ...
        iii) Prescription drugs when prescribed by a licensed practitioner authorized under State law and other over-the-counter medication (including insulin) when approved by a licensed practitioner or other qualified health professional; in addition, costs of medical supplies, sickroom equipment (including rental) or other prescribed equipment are deductible; ...

(vii) Securing and maintaining a seeing eye or hearing dog including the cost of dog food and veterinarian bills; ...
ix) Reasonable cost of transportation and lodging to obtain medical treatment or services.

Federal Regulation 28 CFR 35.136, Service animals, states, (f) Inquiries. A public entity shall not ask about the nature or extent of a person's disability, but may make two inquiries to determine whether an animal qualifies as a service animal. A public entity may ask if the animal is required because of a disability and what work or task the animal has been trained to perform. A public entity shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal.

Agency Policy, Operation Manual, Volume II, Section 5430-I states, The following are allowable medical expenses: The cost of securing and maintaining "service animals," specifically service dogs or miniature horses trained to do work or perform tasks for persons with disabilities, including the cost of food and veterinary bills. Prior to allowing the medical deduction verification that the animal is certified as a "service animal" and trained to assist with medical needs must be provided.

Agency Policy, Operation Manual, Volume II, Section 5420, MEDICAL DEDUCTIONS, states,

A. Do not consider any medical expense which is reported timely which will be reimbursed or which reimbursement is undetermined until such time as the reimbursement is verified or denied and the nonreimbursable amount is determined. If the reimbursement status cannot be determined, document the case record accordingly.

B. Determine if the member eligible for a medical deduction has medical insurance or is included in a Medicaid case.

Medical insurance or a MA case indicates the possibility of reimbursement which must be resolved prior to consideration of the expense.

C. Determine if any currently reported one-time only medical expenses were considered during any previous certification period. Examples of one-time expenses are hospital bills, ambulance bills, laboratory fees, noncontinuing doctor visits and/or prescription costs such as treatment for flu, etc. ...

For one-time only, nonreimbursable expenses, the household may elect to receive the entire deduction at one time, have it averaged over the certification period or receive a deduction for each month an installment payment is due. Monthly installment agreements need not be formal but are verified if questionable. Document the method chosen by the household. ...

H. Medical expenses must be reported at application, reapplication and recertification according to the reporting requirements in MS 6735. If the expense is not reported timely, then no deduction is allowed.

Heidi Erickson filed a SNAP application on June 12, 2013 and provided medical documentation showing that she has a service animal for her medical conditions. The Agency did not consider Ms. Erickson's service animal expenses. Ms. Erickson

provided debit transactions from various merchants in order to get a deduction for animal expenses and transportation expenses.

The Agency testified the correct verification was not provided such as itemized receipts or Explanation of Benefits (EOB) statements. The Agency did not request itemized statements or EOB statements. In addition, the Agency testified Ms. Erickson failed to provide verification that her service animal is certified.

Ms. Erickson testified that she is not required to provide certification for her service animal which is in accordance with the Americans Disability Act.

<u>Based on the evidence and regulatory guidelines, the Agency did not correctly determine SNAP benefits.</u> Federal regulatory guidelines do not require that SNAP applicants or recipients provide certification of service animals before allowable deductions can be considered. However, the Agency was correct to determine that EOB statements were needed in order to determine the portion of the medical expense reimbursed to Ms. Erickson. In addition, the Agency was correct to request itemized statements which identify what and when an item was purchased and the exact cost. The Hearing Officer notes that medical transportation cost can be considered based on mileage if the individual uses their own vehicle or verifies an expense for public transportation. However the doctor appointment has to be verified in order to justify or coincide with the receipt for transportation reimbursement. In conclusion, SNAP benefits were not determined correctly.

## RECOMMENDED DECISION(eis

It is the recommendation of the Hearing Officer that the decision of the Department for Community Based Services be **reversed** and **remanded**. The Agency is reversed because SNAP benefits were not determined correctly. The case is remanded in order for the June application to be reinstated and the correct verification requested in writing. Heidi Erickson will again be notified of the Agency's determination and will have appeal rights if dissatisfied.

## EXCEPTION AND APPEAL RIGHTS

**EXCEPTIONS:**
Either party may file an exception to the Hearing Officer's Findings of Fact or Conclusions in writing, within **fifteen (15) days** of the date of this Recommended Order.  Filing an exception is not the same as filing an appeal.  **Only the Final Order may be appealed.**

In filing an exception the party has the opportunity to show why there is a disagreement with a finding or conclusion made by the Hearing Officer.  No additional evidence may be submitted with the exception, unless the Hearing Officer ruled not to allow the evidence to be entered during the hearing and the evidence is relevant to the exception.

Exceptions must be written and received by the close of business on the **fifteenth (15th) calendar day** from the date on this Recommended Order. Exceptions are to be submitted to:

Office of the Commissioner
Department for Community Based Services
275 East Main Street, 3W-A
Frankfort, KY 40621

The party filing an exception is to send a copy of the exception to the other party at the same time the exception is submitted to the Office of the Commissioner.

After the Exception period is over the Office of the Commissioner will evaluate the exceptions and draft a Final Order. The Final Order will either **Affirm** the Recommended Order (the Hearing Officer's decision is accepted), **Reverse** the Recommended Order (the Hearing Officer's decision is changed), or **Remand** the case to the Families and Children Administrative Hearings Branch (the Hearing Officer's decision is not accepted or changed but sent back for additional action to be taken).

**APPEALS:**

If the appellant disagrees with the Final Order, an appeal to the Public Assistance Appeal Board (Appeal Board) may be made in accordance with 921 KAR 2:055, 921 KAR 3:070 or 907 KAR 1:560. The appeal to the Appeal Board must be made in writing within **twenty (20) calendar days** from the date of the Final Order. The appeal may be made by contacting the local Department for Community Based Services office or by writing directly to:

Cabinet for Health and Family Services
Office of the Secretary
Appeal Board for Public Assistance
Attn: Dana Nickles
275 East Main Street, 5W-A
Frankfort, KY 40621

The appellant may request to submit additional evidence to the Appeal Board to explain why the appellant disagrees with the Final Order. If no additional evidence is submitted, the Appeal Board reviews the record of the original hearing, any exceptions filed and makes a determination to Affirm, Reverse or Remand the case.

If the appellant disagrees with the decision of the Appeal Board, then an appeal can be made to Circuit Court in accordance with KRS 13B.140. The appeal to Circuit Court is to be made within **thirty (30) calendar days** of the date of the decision of the Appeal Board. If venue for appeal is not stated in the enabling statutes an appeal may be made to Franklin Circuit Court or the Circuit Court of the county in which appealing party resides. The petition shall be accompanied by a copy of the Final Order. A party may file a petition for judicial review only after the party has exhausted all administrative remedies available within the agency.

RECOMMENDED this 6th day of November 2013

*Deborah Stanley*

Deborah Stanley, Administrative Hearing Officer

## CERTIFICATE OF SERVICE

It is hereby certified that a copy hereof was mailed to the person(s) at the address listed below this 6th day of November 2013:

Heidi K. Erickson
P O Box 23224
Lexington, KY  40523-1838

*Also sent via email to:* Heidi_k_erickson@yahoo.com

It is hereby certified that a copy hereof was electronically mailed to the person(s) listed below this 6th day of November 2013:

Laura Helvey, Family Support Specialist
Rebecca Winburn, Field Services Supervisor
Steven Courtney, SRAA

*Marla Duvall*

Division of Administrative Hearings

COMMONWEALTH OF KENTUCKY
CIRCUIT COURT OF MADISON COUNTY
DIVISION _II_____ CASE # _14-C1+ 5/6_

HEIDI ERICKSON,
        *Plaintiff,*
VS.

COMMONWEALTH OF KENTUCKY, CABINET OF HEALTH AND FAMILH SERVICES,
AUDREY HAYNES, SECRETARY; TERESA JAMES, COMMISSIONER of DIVISION of COMMUNITY
BASED SERVICES (DCBS), PUBLIC ASSISTANCE APPEALS BOARD, DANA NICKLES, LEE GUICE,
COLLEEN HAGAN, MARK NEFF, MATHEW MOONEY, MARIA DELA CRUZ, WENDY CUMPSTON,
LAURA HELVEY and DOE (unknown supervisor(s)).
        *Defendants.*

ADDENDUM   B

The Ageny's Exception issued on 11/21/13

29



RECEIVED

NOV 2 1 2013

COMMISSIONERS OFFICE

CABINET FOR HEALTH AND FAMILY SERVICES
DEPARTMENT FOR COMMUNITY BASED SERVICES

Steven L. Beshear
Governor

Division of Family Support
275 East Main Street, 3E-I
Frankfort, KY 40621
Phone (502)564-3440
Fax (502)564-0405
www.chfs.ky.gov

Audrey Tayse Haynes
Secretary

TO:       Edwin Langford
          Commissioner's Office

FROM:     Wendy Cumpston, Manager  WSU
          Nutrition Assistance Branch

DATE:     November 21, 2013

SUBJECT:  Exception to Recommended Order
          Heidi Erickson (No. 351600644)

The Division of Family Support (DFS) respectively files an exception to the recommended order for Administrative Hearing No. FS 351600644, wherein the hearing officer recommends that the decision of the Department of Community Based Services be reversed and remanded stating that the Agency did not correctly determine SNAP benefits. The hearing officer asserts that Federal regulatory guidelines do not require that SNAP applicants or recipients provide verification that a service animal is specially trained before the animal's expenses can be considered as medical deductions in the Supplemental Nutrition Assistance Program (SNAP) case.

The Agency's Policy Manual, Volume II, MS 5430, I, states that allowable medical deductions include "the cost of securing and maintaining "service animals," specifically service dogs or miniature horses trained to do work or perform tasks for persons with disabilities, including the cost of food and veterinary bills. Prior to allowing the medical deduction verification that the animal is certified as a "service animal" and trained to assist with medical needs must be provided". The Agency's policy is based on a Federal Nutrition Service (FNS) clarification of Federal Regulation 7 CFR 273.9(d)(3)(vii), "shall be interpreted to include the costs associated with any animal specially trained to serve the needs of disabled Program participant" and defined as a "service animal" in accordance with 28 CFR 35.

At the hearing, Ms. Erickson provided a written statement and her own testimony that her animal was not "specially trained" prior to the purchase of the animal. In fact, Ms. Erickson stated that the animal was purchased as a puppy to allow her to train the animal herself.

The hearing officer cites another section of 28 CFR 35, Service animals, which states, "a public entity shall not ask about the nature or extent of a person's disability, but may make two inquiries to determine whether an animal qualifies as a service animal." Ms. Erickson also cited the Americans with Disabilities Act (ADA) as evidence to support her position. However, the portion cited by the hearing officer and the ADA citation

KentuckyUnbridledSpirit.com



An Equal Opportunity Employer M/F/D

applies only to public entities in respect to the service animal entering a public establishment. It does not apply to determining eligibility for public assistance programs. 7 CFR 273. establishes the eligibility requirements for SNAP.

In the Conclusion of the Recommended Order, the hearing officer states the Agency did not correctly determine SNAP benefits and recommended that the decision of the Department for Community Based Services be reversed and remanded.

DFS acknowledges Ms. Erickson's disability and that she can receive medical deductions for an animal specially trained to assist her. However, it is the assertion of DFS that the Agency properly determined that the 6-8 week old puppy was not specially trained per Agency policy and does not meet the definition of a service animal in accordance with federal regulations, thus the costs to acquire it and support it prior to it being properly trained are not allowed.

WC/NAB/lsd

COMMONWEALTH OF KENTUCKY
CIRCUIT COURT OF MADISON COUNTY
DIVISION ___II___   CASE # _14-CI-96_

HEIDI ERICKSON,
              *Plaintiff,*
VS.

COMMONWEALTH OF KENTUCKY, CABINET OF HEALTH AND FAMILH SERVICES,
AUDREY HAYNES, SECRETARY; TERESA JAMES, COMMISSIONER of DIVISION of COMMUNITY
BASED SERVICES (DCBS), PUBLIC ASSISTANCE APPEALS BOARD, DANA NICKLES, LEE GUICE,
COLLEEN HAGAN, MARK NEFF, MATHEW MOONEY, MARIA DELA CRUZ, WENDY CUMPSTON,
LAURA HELVEY and DOE (unknown supervisor(s)).
              *Defendants.*

---

ADDENDUM   C

The Commissioner's Final Orders, reversing the Hearing Officer's Recommended Decision, issued on
6/9/14

30

**COMMONWEALTH OF KENTUCKY**
**CABINET FOR HEALTH AND FAMILY SERVICES**
**DEPARTMENT FOR COMMUNITY BASED SERVICES**

**Administrative Action No. FS 351600644**

IN RE:  Heidi K. Erickson

## FINAL ORDER

The Cabinet having considered the entire record in this matter, including the Findings of Fact, Conclusions of Law, and the Recommended Order of the Administrative Hearing Officer, dated November 6, 2013, and having considered the exceptions filed by the Appellee and the responses filed by the Appellant,

IT IS HEREBY ORDERED THAT the Recommended Order of the Administrative Hearing Officer is SET ASIDE, and the following findings of Fact and Conclusions of Law are incorporated herein as a part of this final order;

## FINDINGS OF FACT

1. On June 12, 2013, Heidi Erickson filed an application for Supplemental Nutrition Assistance Program (SNAP) benefits.

2. On June 12, 2013, the Agency requested information which included proof of all medical expenses paid over prior two month and for service animal/transportation.  (Agency Exhibit F)

3. On June 24, 2013, Ms. Erickson was approved prorated SNAP benefits for the application month of June in the amount of $94 and $102 effective July 2013 and on-going.  (Agency Exhibit D)

4. Ms. Erickson requested a hearing and requested that her benefits be restored to her prior amount of SNAP benefits of $188. Ms. Erickson is currently being issued $200 in SNAP benefits, the maximum allotment for a house size of one.

5. Based on a printout provided by Ms. Erickson of CVS prescriptions filled, the Agency calculated her prescription cost as $38.37.  (Agency Exhibit D)

6. The Agency calculated Ms. Erickson's allowable medical deduction as $108 for the application month of June 2013 which included her Medicare premium of $104.90 and prescription cost of $38 minus $35 ($105 + $38 = 143 − 35 = $108).  (Agency Exhibit A and D)

7. The Agency calculated Ms. Erickson's allowable medical deduction as $3 effective July 2013 based on prescription cost of $38 ($38 − 35 = $3).  The Medicare premium was disallowed as the State was the payor in July.  (Agency Exhibits A and D)

8. Ms. Erickson is dissatisfied that the Agency disallowed a debit/checking account transaction posted on May 13, 2013 for a doctor visit expense. (Appellant Exhibit 1)

9. The Agency testified that an Explanation of Benefits (EOB) statement was needed in order for doctor visits to be considered.

10. The Agency testified that EOB statements were not requested from Ms. Erickson.

11. Agency Exhibit C shows that Ms. Erickson provided primarily debit transactions as verification of expenses instead of itemized receipts from Wal-Mart, Petco, Lowe's, etc.

12. Ms. Erickson is dissatisfied that the Agency disallowed expenses in May 2013 for her service animal consisting of, purchasing and securing transportation; training equipment; veterinarian; dog food; and other dog related expenses totaling $2,652.25. (Appellant Exhibit 2 and Agency Exhibit C)

13. The Agency testified their policy requires that Ms. Erickson provide certification to show the animal is trained as a service animal before deductions can be considered as an allowable deduction. (Agency Exhibit E)

14. Ms. Erickson testified and presented documents to show that the Federal SNAP regulations and the American Disabilities Act (ADA) contain no language requiring a service animal to be certified. She testified the ADA states that a public entity shall not require proof that the animal has been certified, trained or licensed. (Appellant Exhibit 2)

15. Ms. Erickson provided the Agency with a medical statement from Dr. Richard Fraser which states Ms. Erickson's need for the service animal due to medical conditions consisting of aid in balance, anxiety and seizures. (Agency Exhibit C)

## CONCLUSION

Kentucky SNAP Policy Manual, Volume II, MS 5430, I, states that allowable medical deductions include "the cost of securing and maintaining service animals", specifically service dogs or miniature horses trained to do work or perform tasks for persons with disabilities, including the cost of food and veterinary bills. Prior to allowing the medical deduction, verification that the animal is certified as a service animal and trained to assist with medical needs, must be provided. The Agency's policy is based on a Federal Nutrition Service (FNS) Policy Memo dated July 2, 1990 titled "Treatment of Expenses for Service Animals" that has not been superseded by any other FNS Policy Memo states "Thus, 7CFR 273.9(d)(3)(vii) shall be interpreted to include the costs associated with any animal specially trained to serve the needs of disabled Program participants".

In the case at hand, the Appellant provided a bill of sale for the purchase of a puppy dated June 2013 and a statement of medical expenses that listed the purchase of a service dog "(who is

now in training)" indicating that the animal was not specially trained as mandated by the SNAP Policy Manual at the time of the June 12, 2013 application.

THEREFORE, the undersigned concludes that the action taken by the Agency to disallow medical expenses for a service animal that was not verified as being specially trained to serve the needs of the Appellant's disability was correct, and the decision of the Department for Community Based Services is AFFIRMED.

## APPEAL RIGHTS

If the Appellant is dissatisfied with the Final Order, you may appeal it to the Public Assistance Appeal Board under the provisions of KRS 205.231; 921 KAR 2:055; 921 KAR 3:070; OR 907 KAR 1:560. An appeal must be made in writing and filed within twenty (20) calendar days of the mailing date of the Final Order. You may contact your Department for Community Based Services office to file your appeal or write directly to: Office of the Secretary, Appeal Board for Public Assistance, Attn: Dana Nickles, 275 East Main Street 5W-A, Frankfort, KY 40621.

A Final Order of the Public Assistance Appeal Board may be appealed in accordance with KRS 13B.140(1), which states:

All final orders of an agency shall be subject to judicial review in accordance with the provision of this chapter. A party shall institute an appeal by filing a petition in the Circuit Court of venue, as provided in the agency's enabling statutes, within thirty (30) calendar days after the final order of the agency is mailed or delivered by personal service. If venue for appeal is not stated in the enabling statutes, a party may appeal to Franklin Circuit Court or the Circuit Court of the county in which the appealing party resides or operates a place of business. Copies of the petition shall be served by the petitioner upon the agency and all parties of record. The petition shall include the names and addresses of all parties to the proceeding and the agency involved, and a statement of the grounds on which the review is requested. The petition shall be accompanied by a copy of the final order.

Pursuant to KRS 23A.010(4), "Such review [by the Circuit Court] shall not constitute an appeal but an original action." Some courts have interpreted this language to mean that a summons must be served upon filing an appeal in Circuit Court.

This the _9th_ day of _June_, 2014.


_Teresa C. James_
TERESA C. JAMES, COMMISSIONER

## Certificate of Service

I hereby certify that a true copy of the foregoing FINAL ORDER was mailed to the following individual(s) on this _____ 10 _____ day of _____ June _____ 2014:

Heidi K. Erickson
P. O. Box 23224
Lexington, KY  40523-1838

I further certify that a true copy of the foregoing FINAL ORDER was sent electronically on this same day to:

CHFS - Administrative Hearings Branch

DCBS/Family Support
Laura Helvey, Family Support Specialist
Rebecca Winburn, Field Services Supervisor
Steven Courtney, SRAA

AMANDA L GEHRING, PA IV
CHFS DCBS Commissioner's Office

COMMONWEALTH OF KENTUCKY

CIRCUIT COURT OF MADISON COUNTY
DIVISION _____#_____ CASE # _14-CI-516_

HEIDI ERICKSON,
          *Plaintiff,*

VS.

COMMONWEALTH OF KENTUCKY, CABINET OF HEALTH AND FAMILH SERVICES,
AUDREY HAYNES, SECRETARY; TERESA JAMES, COMMISSIONER of DIVISION of COMMUNITY
BASED SERVICES (DCBS), PUBLIC ASSISTANCE APPEALS BOARD, DANA NICKLES, LEE GUICE,
COLLEEN HAGAN, MARK NEFF, MATHEW MOONEY, MARIA DELA CRUZ, WENDY CUMPSTON,
LAURA HELVEY and DOE (unknown supervisor(s)).
          *Defendants.*

---

## ADDENDUM  D

Appeals Board for Public Assistance Affirming issued on 8/8/14

31

**COMMONWEALTH OF KENTUCKY**
**CABINET FOR HEALTH AND FAMILY SERVICES**
Appeal Board for Public Assistance

Appeal Board No. 14-455
Administrative Action No. FS 351600644

IN RE: Heidi K. Erickson

**APPEAL BOARD FINAL ORDER**

This case is before the Appeal Board for Public Assistance (hereinafter "Appeal Board") by an appeal filed by Heidi K. Erickson (hereinafter "Appellant") after the Appellant's Supplemental Nutrition Assistance Program (SNAP) benefits had been reduced. The Final Order signed on June 9, 2014 affirmed the Agency decision based on the determination that the action taken by the Agency to disallow medical expenses for a service animal that was not verified as being specially trained to serve the needs of the Appellant's disability was correct. In addition to Affirming the Final Order, the Appeal Board further states that Appellant shall have the opportunity to submit to the Agency documents that provide an explanation of benefits for the disputed doctor's visit bills.

The issue before the Appeal Board is whether the Appellant's SNAP benefits have been determined correctly in accordance with 921 KAR 3:020.

The Appeal Board has reviewed the record in this matter, including information submitted subsequent to the issuance of the Final and Recommended Orders and having considered the exceptions filed by Appellant, and is of the opinion that the Final Order dated June 9, 2014 is correct. The Appeal Board concludes that the Findings of Fact and Conclusions of Law incorporated in the Final Order drafted by the DCBS Commissioner adequately set forth the facts and appropriately applied the law. Therefore, the Appeal Board adopts the Findings of Fact and Conclusions of Law as its own.

Therefore, the full Appeal Board concurring, the Final Order dated June 9, 2014 is AFFIRMED and shall provide written notification of the determination to Appellant with a statement of appeal rights.

SO ORDERED on August 8, 2014.

Dana C. Nickles
**Dana C. Nickles**

Lee A. Guice
**Lee A. Guice**

Colleen Hagan
**Colleen Hagan**

## APPEAL RIGHTS

The parties shall take notice that this order may be appealed in accordance with KRS 13B.140(1), which provides:

> All final orders of an agency shall be subject to judicial review in accordance with the provision of this chapter. A party shall institute an appeal by filing a petition in the Circuit Court of venue as provided in the agency's enabling statutes, within thirty (30) days after the final order of the agency is mailed or delivered by personal service. If venue for appeal is not stated in the enabling statutes, a party may appeal to Franklin Circuit Court or the Circuit Court of the county in which the appealing party resides or operates a place of business. Copies of the petition shall be served by the petitioner upon the agency and all parties of record. The petition shall include the names and addresses of all parties to the proceeding and the agency involved, and a statement of the grounds on which the review is requested. The petition shall be accompanied by a copy of the final order.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing order was mailed on August 8, 2014 to:

Heidi Erickson
PO Box 23224
Lexington, KY 40523-1838

I further certify that a true copy of the foregoing order was sent electronically on August 8, 2014 to:

Mark Neff, Branch Manager
CHFS-Administrative Hearings Branch


Laura Helvey, Family Support Specialist
Rebecca Winburn, Field Services Supervisor
Steven Courtney, SRAA

*Dana C. Nickles*

**Dana C. Nickles**

COMMONWEALTH OF KENTUCKY
CIRCUIT COURT OF MADISON COUNTY
DIVISION ___II___      CASE # _14-CI-516_

HEIDI ERICKSON,
              *Plaintiff,*
VS.

COMMONWEALTH OF KENTUCKY, CABINET OF HEALTH AND FAMILH SERVICES,
AUDREY HAYNES, SECRETARY; TERESA JAMES, COMMISSIONER of DIVISION of COMMUNITY
BASED SERVICES (DCBS), PUBLIC ASSISTANCE APPEALS BOARD, DANA NICKLES, LEE GUICE,
COLLEEN HAGAN, MARK NEFF, MATHEW MOONEY, MARIA DELA CRUZ, WENDY CUMPSTON,
LAURA HELVEY and DOE (unknown supervisor(s)).
              *Defendants.*

---

EXHIBIT #1

Hearing Officer's Recommended Decision, reversing the DCBS issued on 11/6/13

CLAIMANT'S (PETITIONER'S) AFFIDAVIT
Submitted To Support Recert, 2013
SNAP Application

33

COMMONWEALTH OF KENTUCKY
CIRCUIT COURT OF MADISON COUNTY
DIVISION _II_____   CASE # _14-CI-516_

HEIDI ERICKSON,
          *Petitioner,*

VS.

COMMONWEALTH OF KENTUCKY, CABINET OF HEALTH AND FAMILH SERVICES,
AUDREY HAYNES, SECRETARY; TERESA JAMES, COMMISSIONER of DIVISION of COMMUNITY
BASED SERVICES (DCBS), PUBLIC ASSISTANCE APPEALS BOARD, DANA NICKLES, LEE GUICE,
COLLEEN HAGAN, MARK NEFF, MATHEW MOONEY, MARIA DELA CRUZ, WENDY CUMPSTON,
LAURA HELVEY and DOE (unknown supervisor(s)).
          *Defendants.*

EXHIBIT 2

CLAIMANT'S (PETITIONER) HEARING BRIEF
FILED TO AGENCY FOR HEARING OFFICER

32

COMMONWEALTH OF KENTUCKY
CIRCUIT COURT OF MADISON COUNTY
DIVISION ____II____ CASE # _14-CI-516_

HEIDI ERICKSON,
          *Petitioner*,

VS.

COMMONWEALTH OF KENTUCKY, CABINET OF HEALTH AND FAMILH SERVICES,
AUDREY HAYNES, SECRETARY; TERESA JAMES, COMMISSIONER of DIVISION of COMMUNITY
BASED SERVICES (DCBS), PUBLIC ASSISTANCE APPEALS BOARD, DANA NICKLES, LEE GUICE,
COLLEEN HAGAN, MARK NEFF, MATHEW MOONEY, MARIA DELA CRUZ, WENDY CUMPSTON,
LAURA HELVEY and DOE (unknown supervisor(s)).
          *Defendants.*

EXHIBIT 3

COMMISSIONER James's LETTER ISSUED
7/25/14 IN RESPONSE TO CLAIMANT's
REATED REQUEST for Relif

34



CABINET FOR HEALTH AND FAMILY SERVICES
DEPARTMENT FOR COMMUNITY BASED SERVICES
Commissioner's Office
COA ACCREDITED AGENCY

Steven L. Beshear
Governor

275 East Main Street, 3W-A
Frankfort, KY 40621
Phone (502) 564-3703
Fax (502) 564-6907
www.chfs.ky.gov

Audrey Tayse Haynes
Secretary

July 25, 2014

Heidi K. Erickson
PO Box #2
Big Hill, Kentucky 40405

Dear Ms. Erickson:

This is in response to your recent inquiry regarding SNAP benefits.  The Department for Community Based Services (DCBS) appreciates being informed of your concerns and acknowledges the importance of accurate and effective provision of SNAP services.

We have carefully reviewed the information and issues you identified.  This review confirmed that you requested and were provided an Administrative Hearing regarding SNAP benefits based upon your June 12, 2013, application.  A Final Order was issued June 9, 2014, affirming the action of DCBS to apply a SNAP benefit reduction.  On June 30, 2014, you filed an appeal to the Final Order with the Public Assistance Appeal Board.

We understand that you requested your SNAP benefits be restored to the amount prior to the reduction in benefits applied subsequent to issuance of the Final Order.  Our records indicate that your period of eligibility which began on 6/1/13, expired on 5/31/14.  Based upon Federal Regulation, benefits are not reduced or terminated unless the certification period expires.  Upon expiration of the certification period, the recipient may reapply and have eligibility redetermined.   On 4/14/14, you completed a recertification interview and eligibility was correctly determined for the certification period beginning 6/1/14.  We also understand that you have requested an Administrative Hearing regarding the recertification of your SNAP benefits for the period beginning 6/1/14.  Since this was a recertification of benefits, per the federal regulation you do not have a right for continuation of benefits at a previous level pending the Administrative Hearing.

We hope that this information is helpful in understanding your SNAP benefits.  We encourage you to continue to cooperate with the DCBS in provision of services to you.  Please do not hesitate to contact this office for further assistance.

Sincerely,

Teresa C. James, LCSW
Commissioner

KentuckyUnbridledSpirit.com

An Equal Opportunity Employer M/F/D

COMMONWEALTH OF KENTUCKY
CIRCUIT COURT OF MADISON COUNTY
DIVISION _____II_____ CASE # _14-CI-516_

HEIDI ERICKSON,
                    *Petitioner,*

VS.

COMMONWEALTH OF KENTUCKY, CABINET OF HEALTH AND FAMILH SERVICES,
AUDREY HAYNES, SECRETARY; TERESA JAMES, COMMISSIONER of DIVISION of COMMUNITY
BASED SERVICES (DCBS), PUBLIC ASSISTANCE APPEALS BOARD, DANA NICKLES, LEE GUICE,
COLLEEN HAGAN, MARK NEFF, MATHEW MOONEY, MARIA DELA CRUZ, WENDY CUMPSTON,
LAURA HELVEY and DOE (unknown supervisor(s)).
                    *Defendants.*

EXHIBIT 4

35

COMMONWEALTH OF KENTUCKY
CIRCUIT COURT OF MADISON COUNTY
DIVISION ___II___ CASE # _14-CI-516_

HEIDI ERICKSON,
        *Petitioner,*

VS.

COMMONWEALTH OF KENTUCKY, CABINET OF HEALTH AND FAMILH SERVICES,
AUDREY HAYNES, SECRETARY; TERESA JAMES, COMMISSIONER of DIVISION of COMMUNITY
BASED SERVICES (DCBS), PUBLIC ASSISTANCE APPEALS BOARD, DANA NICKLES, LEE GUICE,
COLLEEN HAGAN, MARK NEFF, MATHEW MOONEY, MARIA DELA CRUZ, WENDY CUMPSTON,
LAURA HELVEY and DOE (unknown supervisor(s)).
        *Defendants.*

EXHIBIT 5

36